UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

C.P. by CURTIS and MERRILEE P., Individually )
and as his Parents and Next Friends,          )
                                              )    05-2145
            Plaintiffs,                       )
                                              )
      v.                                      )
                                              )
KANKAKEE COMMUNITY UNIT SCHOOL                )
DISTRICT and ILLINOIS STATE BOARD             )
OF EDUCATION,                                 )
                                              )
            Defendants.                       )

ORDER

On June 27, 2005, the plaintiffs filed a complaint for an automatic statutory injunction or in the alternative, for preliminary injunction [#1]. Also on that date, the plaintiffs filed a motion for statutory injunction or in the alternative, for preliminary injunction [#2], and a memorandum in support of the motion [#3]. The complaint states that "time is of the essence in deciding this issue to benefit C.P."[1]

C.P. is a child whose multiple disabilities interfere with his ability to learn in a traditional classroom setting. When C.P. was in kindergarten, the defendant, Kankakee Community Unit School District ("the school district") began to suspect that C.P. suffered from learning disabilities. C.P. was given an Individual Education Program ("IEP") to respond to his reading

---

[1] The plaintiffs' leisurely attitude toward the procedural aspects of this action are all the more puzzling when viewed in light of this assertion. The complaint, motion, and memorandum were filed on June 27, 2005. On July 13, 2005, while reviewing the motion, the court noted that the certificate of service for the motion reflected service through the court's CM/ECF system. The defendants had not yet entered an appearance in the case, so could not receive notice through CM/ECF. The plaintiffs were ordered to serve the motion through standard means and file a corrected certificate of service with the court. The corrected certificate of service was never filed; however, on July 18, 2005, the school district filed a motion to dismiss, and on August 1, 2005, instead of filing a response, the plaintiffs filed a motion for a two-week extension of time. Counsel relied on CM/ECF to serve the motion for extension of time on the Illinois State Board of Education ("ISBE"), stating that he understood that counsel for ISBE had entered her appearance in this matter. A quick review of the docket sheet would have shown that counsel for the ISBE had not yet done so. The plaintiffs filed their response to the motion to dismiss on August 10, 2005.

needs. The parents allege that the school district has urged them to accept placement for C.P. in a self-contained (cross-categorical) classroom, which the parents have rejected in favor of placement in a general education classroom with supports because they prefer to keep C.P. in an environment with his non-disabled peers. When C.P. was retained in second grade, he was transferred to the school district's "Montessori" School, where he apparently remained through the fifth grade.[2] The parents have become increasingly displeased with C.P.'s academic progress.

C.P. will begin his 6th grade school year in the fall of 2005 after seven years in the general education classrooms with supports. On May 20, 2005, the school district convened an IEP meeting with C.P.'s parents to determine the proper placement for C.P. for the upcoming academic year. The school district proposed that C.P. be placed in a cross-categorical classroom at Kennedy Middle Grade Center. The school district states that the parents rejected the recommended placement and asked that C.P. be placed at Acacia Academy ("Acacia") in LaGrange Highlands, Illinois, with transportation provided by the school district.[3]

In a letter dated June 2, 2005, C.P.'s parents informed the school district that they rejected the placement proposed in the IEP. They further informed the school district that they intended to remove C.P. from the school district and, ten days after the date of their letter, they would enroll him in Acacia. They further stated they would seek reimbursement for the cost of the private placement from the school district. In a June 7, 2005 letter to C.P.'s parents, the school district reiterated its position that the best placement for C.P. was a cross-categorical classroom at Kennedy Middle Grade Center, and based upon that placement, the school district disclaimed responsibility for payment of C.P.'s attendance at Acacia. The letter indicates that the school district expected "to see [the parents] at the June 13, 2005 IEP meeting." There is nothing before the court to indicate that the June 13 meeting took place.

On June 17, 2005, the parents enrolled C.P. in Acacia's summer school program, and he began attendance on June 20, 2005. The parents informed Acacia that the school district was responsible for tuition payments. On June 22, 2005 – two days after C.P. began the Acacia summer program – the parents requested a special education due process hearing before an impartial hearing officer appointed by the ISBE.

The complaint, motion for statutory injunction or in the alternative for preliminary injunction and supporting memorandum were filed on June 27, 2005. The complaint states that Acacia is C.P.'s "stay-put" placement, and the parents cannot provide transportation and pay for Acacia's tuition and other related services during the pendency of the due process hearing and

---

[2] The school district explains that C.P. received special education services at the Montessori school within a regular education classroom via an instructional aide and a modified curriculum.

[3] The school district refers the court to the May 20, 2005 IEP, page 22. The plaintiffs submitted the IEP as sealed Exhibit 4; however, pages 22 and 23 are missing.

appeals.  The complaint further states that C.P.'s parents had no alternative but to place C.P. in the Acacia summer program because Acacia does not accept students in its regular school year program unless it has evaluated them and determined an appropriate program and placement.  Without placement in the summer program, C.P. would be unable to attend Acacia in the fall.

The plaintiffs further assert that the underlying due process hearing is proceeding through the ISBE and the hearing officer they have appointed.  The plaintiffs seek a statutory or preliminary injunction in the form of a "stay put" order to keep C.P. at Acacia, with tuition paid, and transportation provided, by the school district until the hearing officer issues a final order.  The parents also seek a stay of this action until the final order is issued or there is a violation of the injunction they seek.

The school district has filed a motion to dismiss the complaint [#8] pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[4]  The school district states that this court has no subject matter jurisdiction over this action because the parents have failed to exhaust their administrative remedies.  The school district also argues that under the IDEA, C.P. must be kept in his "then-current educational placement" within the school district – not at Acacia.  Finally, the school district argues that the parents' decision to withdraw C.P. from the school district and place him a private school is a unilateral decision for which the school district is not financially responsible.

## ANALYSIS

In ruling on a motion to dismiss, the court must accept the well-pled allegations of the plaintiff and draw all reasonable inferences in the plaintiff's favor.  *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).  Dismissal should be granted only if it appears that the plaintiff cannot prove a set of facts supporting his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

As a preliminary matter, the court notes that the complaint [#1] and the motion for statutory or preliminary injunction [#2] seek the same relief.  Accordingly, the defendant's motion to dismiss the complaint is also construed as a response in opposition to the plaintiffs' motion.

### I.

Ensuring the existence of subject matter jurisdiction is the court's first duty.  *See Steel Co. v. Citizens For a Better Environment*, 523 U.S. 83, 94 (1998).  The defendants argue that this court lacks subject matter jurisdiction because the parents filed this civil action before

---

[4] The defendant has also filed a reply memorandum in support of its motion to dismiss [#15] and the plaintiffs have filed a motion to strike the reply memorandum pursuant to CDIL-LR 7.1(B)(3).  The motion to strike is granted; the reply memorandum is stricken.

exhausting their administrative remedies.

The IDEA guarantees the right of disabled children to a free appropriate public education. 20 U.S.C. § 1412(a)(1)(A). To make certain that a disabled child receives the services he or she requires, the IDEA provides that the child's parents, teachers, and other professionals confer and establish a written IEP to guide the child's education. 20 U.S.C. § 1414.

The IDEA specifies the procedure to be followed when the parents and the educational agency disagree "on any matter relating to the . . . educational placement of the child[.]" 20 U.S.C. § 1415(b)(6)(A). Either party may present a complaint, after which the complaining party – the parents or the educational agency – may request an impartial due process hearing. 20 U.S.C. § 1415(b)(6)(A), (f)(1)(A). The decision made by the impartial hearing officer may be appealed, after which "any party aggrieved by the findings and decision . . . shall have the right to bring a civil action *with respect to the complaint presented*[.]" 20 U.S.C. § 1415(i)(2)(A) (emphasis added). In any such civil action, "the court shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)©).

According to the plain language of the statute, the plaintiffs may not yet bring a civil action with respect to the *complaint* presented because they have not exhausted their administrative remedies. But the plaintiffs do not, at this time, ask the court to review the outcome of the due process hearing and/or appeal. Rather, they seek to enforce an interim provision of the IDEA. During the entire process – unless the educational agency and the parents agree otherwise – "the child shall remain in the then-current educational placement[.]" 20 U.S.C. § 1415(j) (the "stay- put" provision). The court has jurisdiction over this aspect of the case. *See Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22, 24 n.1 (D.D.C. 2004) (recounting the procedural history of the case, including the district court's issuance of a "stay-put" order pending the outcome of the due process hearing).

II.

The plaintiffs seek a "stay-put" order to keep C.P. in his "then-current educational placement" while they exhaust their administrative remedies. "The stay-put provision has been interpreted as imposing an automatic statutory injunction . . . like the automatic stay in bankruptcy. The effect of this interpretation is to make violation of the stay-put provision punishable by contempt [by the district court.]" *Casey K. v. St. Anne Comm. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005).

The complaint alleges that C.P. has spent the past seven years in a general education classroom with supports. The most recent recommendation, and the one sparking the parents' complaint and request for a due process hearing, was to place C.P. in a self-contained (cross-categorical) classroom. The parents rejected that placement and enrolled C.P. at Acacia.

The plaintiffs argue that Acacia is C.P.'s "then-current educational placement," and he must be allowed to stay at Acacia at the school district's expense while they exhaust their administrative remedies and appeals. The case law does not support this argument. The IDEA does not define the meaning of "then-current educational placement." Courts have defined the term to mean "the placement described in the child's most recently implemented IEP," *Johnson v. Special Educ. Hearing Office*, 287 F. 3d 1176, 1180 (9th Cir. 2002); the placement in effect at the time of the previously implemented IEP, *Thomas v. Cincinnati Bd. of Educ.*, 918 F. 2d 618, 625 (6th Cir. 1990); and "somewhere between the physical school attended by the child and the abstract goals of a child's IEP." *Board of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996). "Where school officials unilaterally attempt to change a child's instruction, the child's 'then-current educational placement' will clearly be the previously implemented IEP."[5] *Thomas*, 918 F.3d at 625 (*citing Honig v. Doe*, 484 U.S. 305 (1988)). Nothing compels a different result when the parents unilaterally change the child's placement. *See Casey K.*, 400 F.3d at 515 (Sykes, J., dissenting) ("The IDEA specifically provides that local educational agencies are not required to pay for the education of a child enrolled in private school by his parents without the consent of or referral by the [local educational agency].") (*citing* 20 U.S.C. § 1412(a)(10)(C)(i)-(ii)).

The "then-current educational placement" is the "operative placement" at the time the dispute arises. *Thomas*, 918 F.32d at 625. The parents argue this dispute did not arise until they requested the due process hearing two days after C.P. began attending Acacia; thus, they argue that Acacia is his "then-current educational placement." The court disagrees. The dispute arose when the parents balked at the school district's recommended placement for C.P. for the upcoming academic year. The parents notified the school district on June 2, 2005 that they rejected the proposed placement, and the school district informed the parents on June 7, 2005 that it believed the proposed placement to be in C.P.'s best interest. The parents enrolled C.P. at Acacia on June 17, and he began to attend Acacia on June 20, 2005. That the parents did not request a due process hearing until June 22, 2005 is immaterial. At that point, the dispute had been underway for several weeks. A contrary conclusion would allow the parents to delay the start of a "dispute" until after they unilaterally created a "then-current educational placement" outside the IEP. This runs contrary to the purpose of the "stay-put" provision – to preserve the status quo. *Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 905 (7th Cir. 1996).

Consequently, the court concludes that C.P.'s "then-current educational placement" is in accordance with the most recently implemented IEP – placement in a general education classroom with supports. That is where C.P. must "stay put." However, the parties are free to come to a mutually agreeable alternative if they wish. 20 U.S.C. § 1415(j).

---

[5] The plaintiffs argue that they did not agree with the prior placement at any IEP meeting held in 2004. Nonetheless, it is undisputed that C.P. was placed in a general education classroom with supports.

The motion for statutory injunction to keep C.P. at Acacia pending the outcome of the due process hearing and appeals is denied.

### III.

In the alternative, the plaintiffs seek a preliminary injunction allowing C.P. to stay at Acacia at the school district's expense.

"A party seeking to obtain a preliminary injunction must demonstrate a likelihood of success on the merits, a lack of an adequate remedy at law, and a future irreparable harm if the injunction is not granted. Once the court is satisfied that these three conditions have been met, it must consider the harm that the nonmoving party will suffer if the injunction is granted, balancing it against the irreparable harm to the moving party from the denial of relief. Finally, the court must consider the interest of and harm to nonparties from a denial or grant the injunction." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1020-21 (7th Cir. 2002) (internal citations omitted).

The plaintiffs have not demonstrated a likelihood of success on the merits. Under the IDEA, children with disabilities are entitled to a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A). A child must be educated in the school that he or she would attend if nondisabled unless the child's educational program requires some other arrangement. 34 C.F.R. 300.552(a)(2)(C). The IDEA favors "to the maximum extent appropriate" keeping disabled children in their "regular educational environment . . . unless the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A). "[T]he IDEA and its implementing regulations operate to establish this predicate for a private school 'educational placement': there must first be a determination that the [school district] either cannot or has not fulfilled its obligation to provide a free appropriate public education to the disabled child in the public school." *Casey K.*, 400 F.3d at 515 (Sykes, J., dissenting). C.P. has been in general education classes with supports for seven years. Compl. ¶ 10. Yet, throughout those years, the school district's preferred placement was a more restrictive self-contained (cross-categorical) classroom, which the parents rejected in order to keep C.P. with his non-disabled peers. Compl. ¶ 24. The plaintiffs have not met their burden to demonstrate that the school district cannot or has not fulfilled its obligation to offer a free appropriate public education to C.P. because they have not shown that the cross-categorical classroom proposed by the school district would be an ineffective learning environment for C.P.

This court must limit its determination to the allegations in the complaint and exhibits. On the basis of those documents, the court must deny the motion for preliminary injunction.

The plaintiffs argue in favor of judicial efficiency and against dismissal, stating that the most appropriate step is a remand to the impartial hearing officer so that "when one of the parties appeals, which is almost certain, the parties could readily get a ruling on this urgent matter without interrupting C.P.'s education." The plaintiffs chose to bring this action to this court for a

ruling on the "stay-put" placement by filing a complaint and motion for statutory injunction, or in the alternative, for preliminary injunction.

The court has ruled against the plaintiffs on both issues. Other than an appeal of the underlying proceeding – a possibility, not a certainty – there is nothing before the court to stay, nor any part of the complaint left unresolved.[6] Therefore, the school district's motion to dismiss the complaint [#8] is granted.

## CONCLUSION

The plaintiffs' motion to strike the defendant's reply memorandum [#16] is granted. The defendant's reply memorandum in support of its motion to dismiss [#15] is stricken. The motion for statutory injunction or in the alternative for preliminary injunction [#2] is denied. The motion to dismiss [#8] is granted. This case is terminated. The parties shall bear their own costs.

Entered this 29th day of August, 2005.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[6] None of the allegations suggest wrongdoing by the ISBE. If the court is mistaken in its understanding, the plaintiffs are free to file a motion for reconsideration with a proposed amended complaint, making clear its allegations against the ISBE.